UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Frank W. Fellows,

       Petitioner,

       v.                      Civil Action No. 2:20-cv-139-wks-jmc

James Baker and
Thomas J. Donovan, Jr.,

       Respondents.

## **REPORT AND RECOMMENDATION**
(Docs. 4, 5, 10)

Petitioner Frank W. Fellows, a prisoner proceeding *pro se*, has filed a Petition

for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 to vacate his prior

conviction in the Vermont Superior Court for sexual assault and lewd and lascivious

conduct, in violation of 13 V.S.A. §§ 3252(e)(1) and 2602. (Doc. 4.) Fellows asserts

various errors and rights violations regarding his underlying criminal trial, his

postconviction-relief (PCR) proceedings in Vermont state court, and execution of his

sentence by the Vermont Department of Corrections (DOC). (*Id.*) Presently before the

court is a Motion to Dismiss filed by the State of Vermont (hereafter referred to as

"Respondent") on behalf of Respondents James Baker and Thomas J. Donovan, Jr.,

wherein Respondent argues that Fellows's claims are barred by his failure to exhaust

state judicial remedies, procedural default, and the statute of limitations; or are

otherwise without merit. (Doc. 5.) Fellows has filed two memoranda in opposition to

Respondent's Motion. (Docs. 11, 12.)

For the reasons explained below, I recommend that Respondent's Motion to Dismiss (Doc. 5) be GRANTED, and that Fellows's Petition (Doc. 4) be DISMISSED. Given these recommendations, Fellows's Motion to Reconsider this court's denial of his request for appointed counsel (Doc. 10) should be DENIED as moot.

## **Factual and Procedural Background**

### I.    **Criminal Trial and Conviction**[1]

Following an investigation by the Department of Children and Families in April 2009, Fellows was charged in the Essex County Superior Court with sexual assault and lewd and lascivious conduct with a child, his 14-year-old daughter.  Fellows denied the charges, and the case proceeded to a three-day jury trial beginning on September 21, 2010.  At the trial, the State presented the testimony of the victim (Fellows's daughter) and six other witnesses: a clinical psychologist who testified as an expert witness, the nurse practitioner who examined the victim after the incident, the victim's counselor, the victim's teacher, the victim's friend who helped the victim report the incident, and the police officer who conducted the initial interview of Fellows about the incident.  *State v. Fellows*, 2013 VT 45, ¶ 8, 194 Vt. 77, 76 A.3d 608. Fellows called his two sisters as witnesses.  *Id.*

Fellows did not attend the second and third days of trial.  *In re Fellows*, No. 2018-130, 2018 WL 4835000, at *1 (Vt. Sept. 28, 2018).  In October 2010, the jury convicted Fellows, and he was later sentenced to concurrent sentences of five years to

---

[1]  Unless otherwise indicated, the facts in this section and in the "Direct Appeal" section *infra* are drawn from the Report and Recommendation issued in relation to Fellows's first Petition for Writ of Habeas Corpus, which was filed on October 2, 2017.  *See Fellows v. Vermont*, Civil Action No. 5:17–cv–187, 2018 WL 1157788, at *2–3 (D. Vt. Mar. 2, 2018), *report and recommendation adopted in* 2018 WL 1951156 (D. Vt. Apr. 25, 2018).

life for the sexual assault conviction and five to fifteen years for the lewd and lascivious conduct conviction. *Fellows*, 2013 VT 45, ¶ 9.

## II.    Direct Appeal

Fellows appealed his conviction and sentence to the Vermont Supreme Court on two principal grounds: (1) "the trial court erred by allowing the State to question [Fellows's] sisters about [Fellows's] sexual relationship with [the victim's] mother when she was a minor and to use the evidence of that relationship in its closing argument to show that [Fellows] acted in conformity with that prior bad act," *id.* ¶ 10; and (2) "the trial court committed reversible error when it admitted testimony from [the victim's friend] relating the conversations that she had with [the victim] on the day after the incident," *id.* ¶ 21. On June 28, 2013, the Vermont Supreme Court affirmed Fellows's conviction. *Id.* ¶ 1.

## III.    First PCR Petition

On November 5, 2013, Fellows filed his first PCR Petition in state court, arguing that he received ineffective assistance of counsel from his trial attorney. In June, July, and August 2017, the Essex Civil Division of the Vermont Superior Court held four days of evidentiary hearings in connection with the PCR Petition. *In re Fellows*, 2018 WL 4835000, at *1. Fellows was represented by counsel, and both Fellows and the State presented expert testimony. *Id.* "In a lengthy and detailed decision," the superior court concluded that Fellows had not demonstrated that his trial counsel was ineffective and denied Fellows's request to amend his PCR Petition to include allegations of prosecutorial misconduct. *Id.*

3

On September 28, 2018, the Vermont Supreme Court affirmed. *Id.* The court acknowledged that Fellows's *pro se* appellate brief "allege[d] dozens of errors in the PCR proceedings," but denied those claims because most of them "were not raised below, and [Fellows] provide[d] little legal or factual support for any of the alleged errors." *Id.* at *2. With regard to the eight claims of ineffective assistance of counsel supported by expert testimony, the court "discern[ed] no basis to disturb the [superior] court's denial of post[]conviction relief." *Id.* Specifically, the court affirmed the superior court's finding that Fellows had directed the defense strategy and that trial counsel's strategic options were limited, given Fellows's admission to police that the complainant was credible, his equivocation as to whether the charged acts had occurred, and his failure to appear at trial after the first day. *Id.*

The court further found that trial counsel was not ineffective for: (1) failing to challenge the admission of Fellows's police interview; (2) failing to contest the medical testimony of the nurse practitioner who examined the victim shortly after the incident; (3) declining to hire a forensic medical expert to counter the nurse practitioner's testimony; (4) failing to file a motion in limine to exclude evidence of Fellows's sexual relationship with the complainant's mother when the mother was 14 years old; (5) acknowledging that relationship in his opening statement to blunt the State's anticipated use of the evidence; (6) failing to call additional character witnesses; or (7) failing to object to the continuation of the trial in Fellows's absence (in fact, the record showed that trial counsel did object, but the trial court overruled the objection). *Id.* at *2–3. Finally, the court held that the trial court did not err in its response to the jurors' request, after they retired to deliberate, to see certain items of evidence, noting

that "there was neither an objection at trial nor an argument at the PCR proceeding concerning this matter." *Id.* at *3.

## IV.    First § 2254 Federal Habeas Corpus Petition

On October 2, 2017, while his first PCR Petition was pending before the superior court, Fellows filed a Petition for Writ of Habeas Corpus in this court pursuant to 28 U.S.C. § 2254. *See Fellows*, 2018 WL 1157788, at *3. Therein, Fellows asserted nine grounds for relief, which the court summarized as follows:

> (1) his Miranda rights were violated; (2) his right to a fair and speedy trial was violated; (3) his Fifth Amendment right to a fair and impartial trial was violated due to his decision not to attend parts of his trial, resulting in his inability to confront adverse witnesses; (4) his rights under the Vermont Public Defender Act (13 V.S.A. § 5231 et seq.) were violated; (5) his criminal trial counsel . . . was ineffective and conspired against him with the prosecutor . . . and jury; (6) the prosecutor at his criminal trial committed various acts of misconduct, including coercing witnesses, tainting the jury, and withholding evidence; (7) transcripts of the trial court sentencing hearing were tampered with and altered to make his sentence harsher; (8) judgment against him was rendered without notice to him or his appearance; and (9) his PCR attorney . . . was ineffective, resulting in a delay in the proceedings such that state remedies are now futile.

*Fellows v. Vermont*, Case No. 5:17–cv–187, 2018 WL 1951156, at *2 (D. Vt. Apr. 25, 2018). The court concluded that Fellows's claims under the Vermont Public Defender Act and regarding the ineffectiveness of his PCR attorney—i.e., the claims numbered (4) and (9) above—were not cognizable under § 2254 and dismissed them with prejudice. *Id.* at *4.

As to the remaining claims, the court found that all but one were barred by the statute of limitations. Specifically, the court determined that "the one-year limitations period began to run on September 26, 2013—90 days after the expiration of the time to

5

seek direct review by writ of certiorari of the Vermont Supreme Court's June 28, 2013 decision in *State v. Fellows*, 2013 VT 45." *Id.* at *5. For claims raised in Fellows's then-pending PCR Petition in state court, the court found that the limitations period was tolled under 28 U.S.C. § 2244(d)(2) from November 5, 2013 through the duration of those pending PCR proceedings. *Id.* However, for claims not raised in Fellows's then-pending PCR Petition, the statute of limitations expired on September 26, 2014, well before Fellows filed his federal Habeas Petition on October 2, 2017. Accordingly, any claims not raised in Fellows's first PCR Petition were time-barred.

Applying this framework, this court concluded that claims (1)–(3) and (6)–(8) were barred by the statute of limitations. *Id.* Claim (5) regarding the ineffectiveness of Fellows's trial counsel was tolled, but because the PCR Petition was still pending before the state court at that time, it was unexhausted. Thus, the court dismissed claim (5) without prejudice pending the resolution of Fellows's first PCR Petition. *Id.*

## V.     Second PCR Petition

On June 13, 2018, following this court's dismissal of his first federal Habeas Petition but before the Vermont Supreme Court had affirmed the denial of his first PCR Petition, Fellows filed a second PCR Petition, proceeding *pro se*. *See In re Fellows*, No. 2020-051, 2020 WL 4038994, at *1 (Vt. July 14, 2020). Therein, Fellows asserted ten claims of ineffective assistance of counsel against the attorney who represented him on direct appeal and two claims against his trial counsel. *Id.* The superior court issued an entry order identifying those claims:

> counsel's alleged failure to obtain necessary transcripts; failure to raise "illegal and mistrial actions" by the prosecutor; failure to argue that a witness's testimony was unduly prejudicial; failure to raise issues

concerning interrogation; failure to raise errors and conflict of interest by defense counsel; failure to raise lack of defense experts; failure to raise that court would not allow the jury to review certain evidence; failure of the system to provide a speedy trial without adequate explanation; unfair treatment for those without means; and, against trial counsel, a claim that counsel felt threatened by petitioner.

*Id.* Fellows filed a response, "agreeing that the court correctly identified the issues he raised." *Id.* In January 2020, the superior court dismissed Fellows's second PCR Petition as an abuse of the writ because his claims could and should have been raised in the first PCR proceeding. *Id.* at *2.

On July 14, 2020, the Vermont Supreme Court affirmed the dismissal of Fellows's second PCR Petition as an abuse of the writ. *Id.* Fellows argued that his failure to raise his claims in his first PCR Petition should be excused because his first PCR attorney was ineffective. He asserted that his PCR attorney should have obtained experts and witnesses, that he should have filed an amended PCR petition, and that he failed to properly investigate, which "would have revealed a conflict of interest arising from a friendship between the prosecutor and his trial counsel." *Id.* at *3. The Court declined to decide, however, whether the ineffectiveness of PCR counsel could constitute cause under state law to excuse a petitioner's failure to raise a claim in an earlier proceeding because, even if the exception did apply, Fellows failed to meet his burden to show that his PCR attorney was ineffective. The Court noted that Fellows raised only "very general allegations of ineffectiveness against [his] PCR counsel that [we]re refuted by the record." *Id.* The record showed that "PCR counsel did obtain and present expert testimony" in support of his ineffective-assistance-of-trial-counsel claims, on which a four-day trial was held, and there was "no evidence

that PCR counsel's failure to file an amended PCR [petition] amounted to ineffective assistance." *Id.*

Accordingly, because Fellows failed to show cause as to why he could not have raised his claims in his first PCR Petition, the Vermont Supreme Court affirmed the dismissal of Fellows's second PCR Petition as an abuse of the writ. *Id.*

## VI.    State Habeas Corpus Petition

Meanwhile, on July 22, 2019, Fellows filed a Petition for Habeas Corpus in state court, arguing that his conviction was wrongful. *See In re Fellows*, No. 2020-136, 2020 WL 4731929, at *1 (Vt. Aug. 14, 2020). The Petition alleged several grounds for relief, including a tainted trial, external influence on the jury, the State's use of false evidence, denial of the right to conflict-free counsel, and the DOC's violation of the Fifth Amendment's Self-Incrimination clause amounting to a "sentence enhancement." (*See* Doc. 5 at 5; Doc. 5-16 at 1, 11, 13; Doc. 5-17 at 7.) The lower court dismissed the Petition as premature because, at the time, Fellows's second PCR Petition was still pending on appeal before the Vermont Supreme Court. (Doc. 5-17 at 16–17.)

On August 14, 2020, the Vermont Supreme Court affirmed, explaining that a habeas petitioner is required to first challenge the legality of his conviction through a PCR petition before seeking habeas relief. *Fellows*, 2020 WL 4731929, at *2. Moreover, under 13 V.S.A. § 7136, Vermont courts should not consider a habeas petition by a prisoner who could seek relief through a PCR petition unless the PCR remedy is "inadequate or ineffective." *Id.* The Court observed that because there had been no final decision on Fellows's second PCR Petition at the time of the lower court's decision, the lower court could not evaluate whether the PCR remedy was "inadequate

8

or ineffective to test the legality of his . . . detention." *Id.* (internal quotation marks omitted). The Court therefore agreed that Fellows's state Habeas Petition had been prematurely filed and affirmed its dismissal. *Id.*

## VII.    The Instant § 2254 Petition

On September 6, 2020, Fellows filed the instant § 2254 Petition. (Doc. 4.) Construing his Petition liberally, Fellows appears to assert eight grounds for relief: (1) his trial counsel rendered ineffective assistance at his criminal trial by, among other things, failing to retain an expert witness, present additional witnesses in Fellows's favor, and suppress statements Fellows made during a police interrogation, and his trial counsel had several conflicts of interest; (2) his PCR attorney was ineffective and also had multiple conflicts of interest with the prosecutor, Fellows himself, and the State's expert witness; (3) the prosecutor at the criminal trial committed various acts of misconduct, including presenting false testimony and fabricated evidence, withholding evidence, and tainting the jury; (4) the judge at his criminal trial committed acts of misconduct, including by failing to act as "gatekeeper" with regard to expert testimony, failing to "cure" false evidence presented by the prosecutor, and rushing jury deliberations; (5) the jury engaged in misconduct by hearing "things" about Fellows "behind closed door[s]," one juror knew his "fill[-]in" defense counsel, one juror knew a witness for the State, and one juror rushed her decision because she did not want to return to deliberate the next day; (6) his Sixth Amendment right to counsel was violated when he did not have counsel prior to or during his police interrogation, for his motion for the trial court to reconsider his sentence, or for his state habeas corpus proceeding; (7) the DOC's refusal to allow him

to participate in certain programming violates his Fifth Amendment right against self-incrimination and amounts to a sentencing "enhancement" beyond the minimum sentence imposed; and (8) the State committed various acts of misconduct during the first PCR proceedings, including presenting false evidence to the court and lying to the court.  (Doc. 4 at 5–20; Doc. 11 at 77.)  Fellows claims that, because "[his] constitutional rights [were] violated," he was "unconstitutional[ly] convict[ed]" and is now being "unlawfully detained."  (Doc. 4 at 23.)

In response to Fellows's Petition, Respondent has filed a Motion to Dismiss. (Doc. 5.)  First, Respondent argues that some of Fellows's claims do not constitute violations of his federal rights.  (*Id.* at 20–21.)  Second, Respondent contends that all claims not raised in Fellows's first PCR proceeding are unexhausted and barred by procedural default.  (*Id.* at 12–19.)  Third, Respondent contends that all claims not raised in the first PCR proceeding are barred by the statute of limitations.  (*Id.*) Finally, of the claims presented here that Fellows did raise in his first PCR Petition, Respondent argues that such claims are vague and Fellows has not met his burden to rebut the presumption of correctness accorded the state court's adjudication of those claims.  (*Id.* at 14–16.)

Fellows has filed a Response to Respondent's Motion to Dismiss, in which he disputes Respondent's summary of the factual background and reiterates his claims. (Doc. 11 at 1–43, 69–77.)  He asserts that his claims are not time-barred because there were pending "action[s] in state court" that prevented him from filing the instant § 2254 Petition earlier and because the State's failure to provide him effective counsel represents a state-created impediment to filing under 28 U.S.C. § 2244(d)(1)(B).  (*Id.*

at 40, 43, 65.)  Fellows further argues that his claims should be equitably tolled due to the "[e]gregious" ineffectiveness of his appellate and first PCR attorneys.  (*Id.* at 34–35.)  He also argues that such alleged ineffectiveness should excuse any procedural default and that, although the state courts did not consider the merits of his claims, they should be deemed exhausted and reviewed by this court.  (*Id.* at 52–53, 57–58.)  The remainder of Fellows's Response consists largely of assertions that his claims are substantively meritorious and that the Vermont Supreme Court's conclusion to the contrary regarding his ineffective-assistance-of-trial-counsel claim was based on an unreasonable determination of the facts.  (*Id.* at 49–50; *see also* Doc. 12.)

## Analysis

Because Fellows is proceeding *pro se*, his Petition must be held to "less stringent standards than formal pleadings drafted by lawyers."  *Rodriguez v. United States*, 206 F. Supp. 3d 862, 864 (S.D.N.Y. 2016) (internal quotation marks omitted); *see McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) ("[W]e read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." (internal quotation marks omitted)).  Nevertheless, a *pro se* litigant is not exempt "from compliance with relevant rules of procedural and substantive law."  *Boddie v. N.Y. State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Here, as explained below, the claims contained in Fellows's § 2254 Petition are barred by the statute of limitations and have been procedurally defaulted.  Moreover, Fellows's Petition fails to establish that his federal rights were violated.  Accordingly, I recommend the Petition (Doc. 4) be DISMISSED, and Respondent's Motion to Dismiss

(Doc. 5) be GRANTED. Given these recommendations, I further recommend that Fellows's Motion to Reconsider his request for appointed counsel (Doc. 10) be DENIED as moot.

## I.    Statute of Limitations

In order for a § 2254 petition to be timely, a prisoner in custody pursuant to the judgment of a state court must file his petition within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). This one-year period is tolled while a petitioner's properly filed application for postconviction relief is pending in state court. *Id.* § 2244(d)(2); *Amante v. Walker*, 268 F. Supp. 2d 154, 156 (E.D.N.Y. 2003). However, the filing of a federal habeas petition does not toll the limitations period. *See Duncan v. Walker*, 533 U.S. 167, 181 (2001). Importantly, district courts in this circuit "assess the timeliness of a habeas petition on a claim-by-claim basis." *United States v. Herbert*, Nos. 03–Cr–211 (SHS), 10–Civ–406 (SHS), 2014 WL 3579806, at *3 (S.D.N.Y. July 21, 2014) (internal quotation marks omitted); *see Fellows*, 2018 WL 1951156, at *5.

Applying the first subsection of this statute, 28 U.S.C. § 2244(d)(1)(A), it is plain that Fellows filed the present Petition well over a year after his conviction became final. The Vermont Supreme Court upheld Fellows's conviction on June 28, 2013. *See Fellows*, 2013 VT 45. Under U.S. Supreme Court Rule 13.1, a petition for certiorari must be filed within 90 days after the order denying discretionary review is entered. *See Amante*, 268 F. Supp. 2d at 156 ("[A] petitioner has ninety days from the entry of judgment in the underlying state action to seek certiorari from the Supreme Court . . . ."). As this court has previously found, Fellows did not file a petition for certiorari, and thus his conviction became final 90 days later, on September 26, 2013. *Fellows*, 2018 WL 1951156, at *5. Therefore, the statute of limitations expired one year from that date, on September 26, 2014. Fellows did not file the instant Petition until September 6, 2020, nearly six years too late. Accordingly, his claims are barred by the statute of limitations unless they were sufficiently tolled by a properly filed postconviction-relief action in state court or triggered at a later date pursuant to § 2244(d)(1)(B)–(D).

### A.    Claims Raised in Fellows's First PCR Petition

For claims presented in Fellows's first PCR Petition—namely, a small subset of his ineffective-assistance-of-trial-counsel claims and his claim of judicial misconduct for providing "only a partial read[-]back" of evidence during jury deliberations (Doc. 4 at 14)—the limitations period was tolled while his first PCR Petition was pending in state court. Thus, part of the claims numbered (1) and (4) were tolled from November 5, 2013 until September 28, 2018, when the Vermont Supreme Court rendered its opinion in the first PCR proceeding. However, nearly two years elapsed between the

end of that tolling period and the date Fellows filed the instant § 2254 Petition.

Although Fellows filed a second PCR Petition on June 13, 2018 (Doc. 5-3 at 2), a

review of the record reveals that that Petition did not contain these claims.[2]  In the

second PCR Petition, Fellows asserted ten claims of ineffective assistance of counsel

against his attorney on direct appeal, including his alleged failure to argue that

Fellows's trial counsel was ineffective and his failure to challenge the trial court's

refusal to allow the jury to review certain evidence.  But Fellows did not directly assert

those underlying claims in his second PCR Petition.  *See Fellows*, 2020 WL 4038994,

at *1.  Rather, he asserted only two claims against his trial counsel: one was dismissed

because Fellows "could find no proof," and the other claimed that his trial counsel "felt

threatened" by him.  *Id.*  Because the relevant portions of claims (1) and (4) were not

raised in Fellows's second PCR Petition, those claims were not further tolled for the

duration of that proceeding, from June 13, 2018 to July 14, 2020.

Moreover, although those claims appear to be raised in Fellows's later state

Habeas Corpus Petition (*see* Doc. 5-16), that Petition did not toll the limitations period

---

[2] Fellows suggests that the Vermont Supreme Court's purported adoption in 2018 of *Martinez v. Ryan*, 566 U.S. 1 (2012), required him to file his second PCR Petition in order to comply with the exhaustion requirement for seeking federal habeas relief for his ineffective-assistance-of-trial-counsel claims, as described by this court in *Fellows*, 2018 WL 1951156, at *5.  (Doc. 11 at 65–66.)  Therefore, he argues, the statute of limitations should be tolled for that period or his delay excused.  (*Id.*)  However, the Vermont Supreme Court did not adopt *Martinez* in 2018; in fact, it expressly declined to do so in *In re Towne*, 2018 VT 5, ¶ 35, 206 Vt. 615, 182 A.3d 1149.  *See also Fellows*, 2020 WL 4038994, at *3.  Moreover, *Martinez* does not require petitioners to file successive petitions in state court.  Rather, the U.S. Supreme Court in *Martinez* held that, for purposes of *federal* habeas corpus review, the ineffective assistance of PCR counsel in arguing ineffective-assistance-of-trial-counsel claims during an initial-review state PCR proceeding can constitute cause to excuse a petitioner's procedural default of those claims.  566 U.S. at 9, 13–14.  As such, *Martinez* merely articulates a gateway through which a federal habeas petitioner may pass to present his otherwise defaulted ineffective-assistance-of-trial-counsel claims.  It does not itself constitute a ground for relief or substantive claim that must first be exhausted in state court before being presented to the federal district court on habeas review.

because it was not a "properly filed" application for postconviction relief.  To be
"properly filed" within the meaning of § 2244(d)(2), a state postconviction petition
must comply with "the applicable laws and rules governing filings." *Artuz v. Bennett*,
531 U.S. 4, 8 (2000).  A petition is not "properly filed" when the state court rejects it
for failure to comply with "filing conditions . . . , which go to the very initiation of a
petition and a court's ability to consider that petition." *Pace v. DiGuglielmo*, 544 U.S.
408, 417 (2005) (distinguishing between petitions rejected on the basis of "filing
conditions" and those rejected on the basis of "procedural bars . . . [that] go to the
ability to obtain relief") (citation omitted).

    The Vermont Supreme Court dismissed Fellows's state Habeas Corpus Petition
as being "prematurely filed" because state law requires petitioners to first seek relief
through a PCR petition, but Fellows still had a PCR Petition pending when he filed his
state Habeas Corpus Petition.  *In re Fellows*, 2020 WL 4731929, at *2.  The Court
explained that, under state law, "certain prerequisites must be satisfied before [a state
habeas] petition will be considered," including "exhaust[ion] [of] the PCR process." *Id.*
(citing 13 V.S.A. § 7136).  Fellows had not met those prerequisites before filing his
state habeas petition.  Accordingly, the Court determined that it was unable to
consider the claims raised in Fellows's premature Petition.  Because the Petition was
rejected for failure to comply with a filing condition, it is not a "properly filed
application for State post[]conviction or other collateral review" sufficient to toll the
limitations period under § 2244(d)(2).  *See Walker v. Walsh*, Civil No. 3:10–CV–1718,
2010 WL 5818292, at *6 (M.D. Pa. Oct. 6, 2010) (postconviction-relief petition was

premature under state law and therefore not "properly filed" for tolling purposes (internal quotation marks omitted)).

Claims (1) and (4) were thus not tolled during his state habeas proceeding—specifically, from July 22, 2019 (Doc. 5-4 at 2), the date Fellows filed his Petition, until the Vermont Supreme Court's decision on August 14, 2020. *See In re Fellows*, 2020 WL 4731929, at *1. Counting only the time during which a properly filed postconviction-relief application containing those claims was not pending in state court, 749 days had passed when Fellows filed the instant § 2254 Petition.[3] *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending . . . ."). Accordingly, the portions of claims (1) and (4) that were raised in Fellows's first PCR Petition are barred by the statute of limitations. And even if these claims were not time-barred, they do not merit federal habeas relief for the reasons described in the sections below.

## B.    Claims Not Raised in Fellows's First PCR Petition

Fellows's remaining claims were not raised in and therefore were not tolled by his first PCR Petition. Even if such claims had been properly raised in his second PCR Petition or his state Habeas Corpus Petition, they would still be time-barred because the limitations period expired before Fellows had filed either. *See Id.* ("Section 2244(d)(2)'s tolling provision . . . does not reset the date from which the one-year

---

[3] This includes 40 days from September 26, 2013 to November 5, 2013 (the time between the date Fellows's conviction became final and the date he filed his first PCR petition), and 709 days from September 28, 2018 to September 6, 2020 (the time between the date the Vermont Supreme Court affirmed the denial of his first PCR petition and the date Fellows filed the instant § 2254 Petition).

statute of limitations begins to run."); *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) ("The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations. Because petitioner's one[-]year period expired in December 1987, his collateral petition filed in 1997 does not serve to revive the limitations period . . . ."). As noted above, this court previously held that all claims not raised in Fellows's first PCR Petition were time-barred. *Fellows*, 2018 WL 1951156, at *4. Absent persuasive argument that a later commencement date should apply to his newly raised claims, there is no reason to disturb that conclusion now.

Fellows first argues that his various postconviction-relief actions constituted pending "state court action[s]," sufficient to trigger the limitations period anew under § 2244(d)(1)(B). (Doc. 4 at 23; *see* Doc. 11 at 65, 68.) That subsection provides that a federal habeas petition is timely if it is filed within one year from "the date on which the impediment to filing [the petition] created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). To trigger application of the section, it is the petitioner's burden to demonstrate that "(1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Rush v. Lempke*, No. 09-CV-3464 (JFB), 2011 WL 477807, at *9 (E.D.N.Y. Feb. 2, 2011) (internal quotation marks omitted).

Contrary to Fellows's interpretation, "State action" in § 2244(d)(1)(B) does not refer to pending lawsuits or postconviction challenges, but rather to unconstitutional

or unlawful "impediment[s]" "created by State action," which prevent timely filing of a federal habeas petition.  *Id.*  Plainly, the postconviction challenges initiated by Fellows were not "created by" State action.  Nor do the Vermont Supreme Court's denials of those postconviction motions amount to an "impediment" for purposes of the statute. *See Perich v. Mazzuca*, Civil Action No. CV-05-2942(DGT), 2007 WL 2455136, at *5 (E.D.N.Y. Aug. 23, 2007) (finding petitioner's argument "that the rendering of an [adverse] opinion by a state court could constitute an 'impediment' under § 2244(d)(1)(B)" to be "simply incorrect").  Moreover, Fellows has not demonstrated that the state court's consideration of his various postconviction motions violated the Constitution or federal laws.  *Jefferys v. LaValley*, 12-CV-3799 (RRM) (LB), 2019 WL 1428366, at *3 (E.D.N.Y. Mar. 29, 2019) (noting that § 2244(d)(1)(B) does not apply if the petitioner fails to offer evidence of an unconstitutional impediment to filing his petition).  In sum, Fellows's argument that § 2244(d)(1)(B) operates to restart the limitations period due to legal actions pending in state court, is simply incorrect.

Alternatively, Fellows argues that his claims are not time-barred under § 2244(d)(1)(B) because the State failed to provide him constitutionally effective defense counsel.  (Doc. 11 at 40, 43.)  He therefore claims that he was denied meaningful access to the courts in violation of due process under the Fourteenth Amendment.  (*Id.* at 43.)  However, the ineffective assistance of court-appointed counsel is "not the type of State impediment envisioned in § 2244(d)(1)(B)." *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd*, 549 U.S. 327 (2007); *Goodwin v. Pallito*, No. 2:14 CV 110, 2015 WL 778613, at *3 (D. Vt. Feb. 24, 2015) (same).  Even if it were, subsection (B) also requires a petitioner to show that the alleged impediment

prevented him from timely filing his federal habeas petition. *See Breeden v. Lee*, No. 10-CV-0954 (RJD), 2010 WL 1930223, at *3 (E.D.N.Y. May 10, 2010) (requiring petitioner under § 2244(d)(1)(B) to establish "a causal relationship between the alleged [impediment] and the lateness of his filing" (internal quotation marks omitted)). Fellows has not made that demonstration here. Thus, application of § 2244(d)(1)(B) is not warranted to trigger the statute of limitations at a later date.

Even if it did apply, Fellows's claims would still be untimely. Section 2244(d)(1)(B) triggers the start of the limitations period on the date the state-created impediment to filing is removed—i.e., the date on which ineffective counsel's representation of the petitioner is terminated. In this case, Fellows asserts that the State appointed ineffective counsel at his trial, direct appeal, and first PCR proceeding. (Doc. 11 at 67.) He proceeded *pro se* during his second PCR proceeding and in filing his state Habeas Corpus Petition. *See Fellows*, 2020 WL 4038994, at *1; *Fellows*, 2020 WL 4731929, at *1. Therefore, the latest possible date that Fellows was represented by allegedly ineffective counsel was September 28, 2018, when the Vermont Supreme Court rendered its final decision on his first PCR Petition. *See Fellows*, 2018 WL 4835000. He filed the instant § 2254 Petition nearly two years later. Moreover, that time was not tolled under § 2244(d)(2) because, as stated above, Fellows's remaining claims were not raised in his second PCR Petition and his state Habeas Corpus Petition was not "properly filed" within the meaning of § 2244(d)(2). Such claims are therefore time-barred.

In support of his argument that constitutionally ineffective appointed counsel should excuse his failure to comply with the statute of limitations, Fellows cites

*Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 11 at 65–67.) His reliance on *Martinez* is misplaced. There, the Supreme Court recognized a narrow means by which a petitioner may show "cause" to excuse the procedural default of ineffective-assistance-of-trial-counsel claims. Specifically, the Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was [constitutionally] ineffective.

*Martinez*, 566 U.S. at 17. However, *Martinez* was solely concerned with overcoming procedural default; the decision does not address or create an exception to the one-year statute of limitations. *See Cabeza v. Griffin*, No. 14–CV–733 (NGG), 2014 WL 3695114, at *2 (E.D.N.Y. July 23, 2014) (collecting cases); *Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014) ("[T]he *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period."); *Manning v. Epps*, 688 F.3d 177, 189 (5th Cir. 2012) (holding that *Martinez* does not extend limitations period under § 2244(d)(1)(B)). Likewise, *Martinez* did not create a new, retroactive constitutional right triggering § 2244(d)(1)(C), as Fellows asserts. (*See* Doc. 11 at 66.) *See Martinez*, 566 U.S. at 9, 16 (declining to make a constitutional ruling); *Cabeza*, 2014 WL 3695114, at *2; *In re Hensley*, 836 F.3d 504, 507 (5th Cir. 2016) (holding that *Martinez* "did not establish a new rule of constitutional law"); *Griffin v. Sec'y, Fla. Dep't of Corr.*, 787 F.3d 1086, 1094 (11th Cir. 2015) (holding that *Martinez* "is not retroactively applicable"). Accordingly, *Martinez* does not save Fellows's claims.

Finally, Fellows claims that he did not discover the factual predicate of his jury misconduct claims until "lat[]er," such that § 2244(d)(1)(D) should apply.  (Doc. 11 at 74.)  But he does not identify which of his four jury-misconduct claims he refers to and does not include any information about precisely what facts he discovered or when. Similarly, Fellows states that his DOC "sentence enhancement" claim was not available to him at the time he filed his first PCR Petition, but he does not specify when the claim did become available.  (*Id.* at 76.)  Nevertheless, upon review of the record, it appears that the "vital facts" underlying both Fellows's jury misconduct and DOC claims have been known to him at least since July 22, 2019, when he filed his state Habeas Corpus Petition, as both claims seem to have been raised therein.  (*See* Doc. 5 at 5; Doc. 5-16 at 1, 13; Doc. 5-17 at 7.)  *See Rivas v. Fischer*, 687 F.3d 514, 534, 535 (2d Cir. 2012) (explaining that the "factual predicate" for a habeas claim consists "only of the 'vital facts' underlying [it]," and not of "new information . . . that merely supports or strengthens a claim that could have been properly stated" before).  Even assuming the limitations period on those claims commenced on July 22, 2019, over one year from that date elapsed before Fellows filed the instant Petition; and, as explained, his state habeas claim did not toll that time as it was not "properly filed." His claims are thus untimely.

## C.    Equitable Tolling

Equitable tolling is also not appropriate in this case.  Equitable tolling permits a court to entertain an otherwise untimely habeas petition if the petitioner establishes: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v.*

*Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted); *see also Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) ("To qualify for [equitable tolling], the petitioner must establish that extraordinary circumstances prevented him from filing his petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll." (internal quotation marks omitted)). "As a general matter, [the Second Circuit] set[s] a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). Indeed, "[t]he term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

In limited circumstances, an attorney's conduct may be "so outrageous and incompetent" that it rises to a "truly extraordinary" level, meriting equitable tolling. *Doe*, 391 F.3d at 159. However, even assuming that a petitioner pursued his rights diligently and that his attorney's conduct amounted to an extraordinary circumstance, the petitioner still must show the "link of causation between the extraordinary circumstances and the failure to file." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *Harper*, 648 F.3d at 137 ("[I]t is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline.").

Fellows argues that he is entitled to equitable tolling because his appellate and PCR attorneys were "[e]gregious[ly]" ineffective for failing to raise the claims Fellows

now raises in his second federal habeas Petition.[4]  (Doc. 11 at 34.)  He asserts that,

"[h]ad counsel raised the[]se issues[,] [he] would have won."  (*Id.* at 35.)  But Fellows

fails to demonstrate a "causal relationship" between his counsel's failure to raise

particular claims on direct appeal and in his first PCR Petition and his failure to

timely file his federal Habeas Corpus Petition.  *See, e.g.*, *Davis v. Bradt*, No. 10–CV–

3587 (DLI), 2013 WL 4647615, at *4 (E.D.N.Y. Aug. 28, 2013) (collecting cases); *Garcia

v. Graham*, 15 Civ. 1606 (LTS)(HBP), 2016 WL 11483852, at *6 n.7 (S.D.N.Y. Mar. 15,

2016).  Accordingly, Fellows is not entitled to equitable tolling of the statute of

limitations.

### D.    Actual Innocence

Nor has Fellows adduced evidence establishing that he is actually innocent of

the crime of conviction.  Actual innocence provides an equitable exception to the

statute of limitations by affording "a gateway through which a habeas petitioner must

pass to have his otherwise barred constitutional claim considered on the merits."

*Rivas*, 687 F.3d at 540 (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)).  "Actual

innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United

States*, 523 U.S. 614, 615 (1998).  This is "a severely confined category" of cases

because a petitioner must submit new reliable evidence showing that "it is more likely

than not that no reasonable juror would have convicted [the petitioner]."  *McQuiggin

v. Perkins*, 569 U.S. 383, 395 (2013) (alteration in original) (internal quotation marks

---

[4]  Again, to the extent Fellows argues that the alleged ineffectiveness of his first PCR attorney justifies equitable tolling pursuant to *Martinez*, that argument is unpersuasive because *Martinez* does not apply to the statute of limitations analysis.  *See Cabeza*, 2014 WL 3695114, at *2.

omitted).  In the Second Circuit, new evidence is "all evidence that was not *presented to the jury* during trial."  *Lopez v. Miller*, 915 F. Supp. 2d 373, 400 n.16 (E.D.N.Y. 2013).

Here, Fellows broadly contends that "[t]he fact of actual innocen[ce] should have been presented" at trial, and implies that he could not have the requisite intent to commit the crime of which he was convicted because he was "unconscious or [a]sleep." (Doc. 11 at 64.)  He also appends an article from a medical journal about "sleep related disorders and abnormal sexual behaviors," which he submits supports his sleep defense.  (Doc. 11-6.)  A review of the record reveals that Fellows's trial counsel did, in fact, present a sleep defense to the jury, *see Fellows*, 2018 WL 4835000, at *2, so the sleep theory itself cannot qualify as "new evidence" for purposes of the actual innocence gateway.  *See Rivas*, 687 F.3d at 543 (new evidence is "evidence not heard by the jury").  It is not clear whether the journal article Fellows attaches to his Response was presented to the jury, but even assuming the article constitutes "new reliable evidence," Fellows simply has not established that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt."  *House v. Bell*, 547 U.S. 518, 538 (2006); *see also Schlup*, 513 U.S. at 316 (noting that, to present a successful gateway claim of actual innocence, a petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error").  Thus, Fellows has not demonstrated that he is entitled to this equitable exception to the statute of limitations bar.

For these reasons, I conclude that Fellows's claims are time-barred. Accordingly, Respondent's Motion to Dismiss should be GRANTED and Fellows's Petition should be DISMISSED.

## II.    Exhaustion and Procedural Default

In addition, federal courts generally do not grant habeas relief from a state court conviction, as Fellows seeks here, unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this exhaustion requirement, a petitioner must "fairly . . . present the federal claim in state court," meaning that he must "inform[] the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones v. Keane*, 329 F.3d 290, 294, 295 (2d Cir. 2003) (internal quotation marks omitted); *see Walker v. Martin*, 562 U.S. 307, 315–16 (2011) (explaining that the exhaustion requirement ensures that the state court has "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights" (alteration in original) (internal quotation marks omitted)).

Exhaustion may be achieved through either a full round of the state's appellate review process or a full round of postconviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Castille v. Peoples*, 489 U.S. 346, 350 (1989) ("[O]nce the state courts have

ruled upon a claim, it is not necessary for a petitioner to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review." (internal quotation marks omitted)).  "The burden of proving exhaustion lies with the habeas petitioner."  *Cartagena v. Corcoran*, No. 04–CV–4329 (JS), 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2009) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998)).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation marks omitted); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).  In such a case, the claim may be "deemed exhausted" because "[the] petitioner no longer has 'remedies available in the courts of the State'" within the meaning of § 2254(b)(1)(A).  *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).  A claim may also be "deemed exhausted" if "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant."  *Id.*; § 2254(b)(1)(B)(i), (ii).

Under Vermont law, a claim that has not been raised on direct appeal is "barred" if, absent exigent circumstances, "the movant deliberately bypassed the issue on appeal."  *In re Stewart*, 140 Vt. 351, 361, 438 A.2d 1106, 1110 (1981) ("Post[]conviction relief is not a substitute for appeal.").  An exception exists for claims of ineffective assistance of trial counsel, however, which may be raised postconviction without having been raised on direct appeal.  *See State v. Spooner*, 2010 VT 75, ¶ 23, n.5, 188 Vt. 356, 8 A.3d 469 (noting that "the proper avenue of raising the issue of

ineffective assistance of counsel is through a motion for post[]conviction relief, and not

through a direct appeal of a conviction" (quoting *State v. Gabaree*, 149 Vt. 229, 232–33

(1988))).  Furthermore, when a § 2254 petitioner has brought a PCR petition in state

court, Vermont law dictates that a second such petition may be considered an "abuse

of the writ." *In re Laws*, 2007 VT 54, ¶¶ 16–22, 182 Vt. 66, 928 A.2d 1210 (quoting

*Sanders v. United States*, 373 U.S. 1, 17 (1963); *McCleskey v. Zant*, 499 U.S. 467, 489

(1991)).  A petitioner abuses the writ by "raising a claim in a subsequent petition that

he could have raised in his first, regardless of whether the failure to raise it earlier

stemmed from a deliberate choice." *Id.* at ¶ 18 (quoting *McCleskey*, 499 U.S. at 489).

In the current case, only a portion of the claims numbered (1) and (4)—

ineffective assistance of trial counsel and judicial misconduct—were fairly and

properly presented to the state court and decided on the merits.  *See Fellows*, 2018 WL

4835000, at *2–3.  Fellows's remaining claims have been or would be procedurally

barred under Vermont law—specifically, the subset of claims (1) and (4) that were not

raised in his first PCR Petition, as well as the claims numbered (2)–(3) and (5)–(8).

As noted, Fellows's direct appeal of his conviction to the Vermont Supreme

Court involved two evidentiary issues: (1) the testimony of Fellows's two sisters

regarding Fellows's sexual relationship with the victim's mother when she was a

minor, and (2) the testimony of the victim's friend regarding conversations she had

with the victim on the day after the incident.  *See Fellows*, 2013 VT 45, ¶¶ 1, 10, 21.

Neither claim is at issue in Fellows's instant § 2254 Petition.  His first PCR Petition

raised a subset of the ineffective-assistance-of-trial-counsel claims asserted here and a

27

single claim of judicial misconduct for providing only a partial readback of certain evidence to the jury during their deliberations. *See Fellows*, 2018 WL 4835000, at *2–3. Those claims have therefore been exhausted. The Vermont Supreme Court also acknowledged that Fellows's *pro se* appellate brief "allege[d] dozens of errors in the PCR proceedings," but denied those claims because they "were not raised below." *Id.* at *2.

In his second PCR Petition, Fellows raised additional claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. *Fellows*, 2020 WL 4038994, at *1. The Vermont Supreme Court dismissed the claims as procedurally barred, concluding that the Petition was an "abuse of the writ" because Fellows failed to show cause as to why he could not have raised his claims in his first PCR Petition. *Id.* at *2–3. In his current § 2254 Petition, Fellows similarly brings additional claims of ineffective assistance of trial counsel that were not asserted in his first PCR Petition. Accordingly, those claims are deemed exhausted for purposes of federal habeas review because such claims would be procedurally barred under state law.

In his second PCR Petition, Fellows also indirectly raised claims that his first PCR attorney was ineffective, as part of his argument to excuse his failure to raise his other claims in his first PCR. *Id.* at *3. Likewise, Fellows asserts ineffective-assistance-of-PCR-counsel claims, identified by this court as claim (2), in this action. But regardless of whether claim (2) has been exhausted or would be procedurally barred by the state court, "Fellows's dissatisfaction with PCR counsel is not a basis for habeas relief." *Fellows*, 2018 WL 1157788, at *7; 28 U.S.C. § 2254(i). Nor are his

28

allegations—i.e., claim (8)—that the State committed various acts of misconduct during the first PCR proceedings. *See Word v. Lord*, 648 F.3d 129, 132 (2d Cir. 2011) ("[A]lleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post[]conviction mechanism for seeking relief."). Because claims (2) and (8) are not cognizable on habeas review, they should be dismissed with prejudice. *See Fellows*, 2018 WL 1951156, at *4.

Finally, in his state Habeas Corpus Petition, Fellows alleged several grounds for relief, including a tainted trial, external influence on the jury, the State's use of false evidence, denial of the right to conflict-free counsel, and the DOC's violation of the Fifth Amendment's Self-Incrimination clause amounting to a "sentence enhancement." (*See* Doc. 5 at 5; Doc. 5-16 at 1, 11, 13; Doc. 5-17 at 7.) Thus, at least several of the remaining claims raised by Fellows in this federal habeas action were raised in his state Habeas Petition. The Vermont Supreme Court dismissed that Petition as "prematurely filed" under state law because, at the time it was filed, Fellows's second PCR Petition was still pending. *Fellows*, 2020 WL 4731929, at *2. The court need not decide here whether that decision of the Vermont Supreme Court announces a procedural bar to his claims because, even if it does not, "it is clear" that the Vermont Supreme Court would hold all of Fellows's remaining claims "procedurally barred." *Reyes*, 118 F.3d at 139 (internal quotation marks omitted). Fellows's claims of prosecutorial misconduct, jury misconduct, violations of the right to counsel, and the sentence "enhancement" by the DOC, in addition to the claims of judicial misconduct not presented in his first PCR Petition, are procedurally barred because Fellows "deliberately bypassed" these claims in his direct appeal to the Vermont Supreme

29

Court.  *In re Stewart*, 140 Vt. at 361.  In summary, claims numbered (3), (5), (6), (7), and most of the claims contained in grounds for relief numbered (1) and (4), would be procedurally barred under state law.[5]

Where a petitioner has failed to properly exhaust his claims in state court, and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," the claims are "procedurally defaulted" for the purpose of federal habeas review.  *Reyes*, 118 F.3d at 140 (emphasis omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)); *see Gray v. Netherland*, 518 U.S. 152, 162 (1996) ("[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.").  A claim is also procedurally defaulted on habeas review if it was actually decided at the state level on "independent and adequate" state procedural grounds.  *Coleman*, 501 U.S. at 729–33; *see also, e.g.*, *Michigan v. Long*, 463 U.S. 1032, 1041 (1983); *Nowakowski v. New York*, 13 CV 3709 (RJD), 2018 WL 6421056, at *6 (E.D.N.Y. Dec. 6, 2018) (stating claims that a state court denied based upon an adequate and independent state procedural rule bars federal habeas review).

Accordingly, claims (3), (5)–(7), and parts of claims (1) and (4) are defaulted, and this court is precluded from considering the merits of those claims unless Fellows can

---

[5] Fellows asserts that his claims should be deemed exhausted because the state courts' refusal to consider the merits of his claims amounts to "an absence of available state corrective process" under § 2254(b)(1)(B)(i).  (Doc. 11 at 53.)  Because his claims are deemed exhausted because "it is clear that the state court would hold the claim[s] procedurally barred," *Reyes*, 118 F.3d at 139 (internal quotation marks omitted), the court need not consider this argument.

establish that he should be excused from that bar. To avoid procedural default, the petitioner must demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009) (quoting *Coleman*, 501 U.S. at 750).

Fellows argues that any procedural default should be excused because his appellate and PCR attorneys were ineffective. (Doc. 11 at 57–58.) To establish the "cause" element, a petitioner "must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A factor is "external to the defense" if it "cannot fairly be attributed to" the petitioner. *Id.* (quoting *Coleman*, 501 U.S. at 753). Attorney error may serve as such a factor and provide cause "only if that error amounted to a deprivation of the constitutional right to counsel." *Id.* "[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument . . . . [A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (internal citation omitted). Plainly, however, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." *Aparicio*, 269 F.3d at 99 (internal quotation marks omitted). In addition, an ineffective-assistance claim must first "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural

default." *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (internal quotation marks omitted).

Fellows first contends that his appellate attorney was ineffective because he failed to argue that testimony about Fellows's sexual relationship with the victim's mother when she was a minor should have been excluded on the basis that the relationship occurred more than 15 years earlier.  (Doc. 11 at 3.)  Instead, counsel challenged the prosecutor's use of that evidence to show that Fellows "acted in conformity with that prior bad act."  *Fellows*, 2013 VT 45, ¶ 10.  Fellows now submits that appellate counsel should have also challenged the admission of that relationship as violating the 15-year limitation imposed by 12 V.S.A. § 1608 and Vermont Rule of Evidence 609.  But both of those rules concern the introduction of evidence of a witness's criminal conviction for purposes of attacking that witness's credibility. Fellows did not testify at his trial, *Fellows*, 2013 VT 45, ¶ 8, and he asserts that he "was never charged or convicted" of a crime in connection with his sexual relationship with the victim's mother when she was a minor (Doc. 11 at 4).  The cited statute and rule therefore do not apply, and Fellows's appellate attorney was not ineffective for failing to include this meritless argument.

Fellows also argues that his appellate counsel was ineffective for failing to collect trial transcripts, which he contends would have provided the basis for claims of "plain error[], conflict of interest, expert[]s vouching for complain[]ant, use of know[n] false evidence, . . . [Fifth] Amendment violation [of] right to not self[-]incriminate, [Sixth] Amendment right to counsel at critical stages, . . . perjury by state[']s witnesses[,] . . . jury misconduct, judge misconduct, and prosecutor misconduct."

32

(Doc. 11 at 28–29, 39.)  Fellows has presented this ineffective-appellate-counsel claim to the state court as an independent claim.  *Edwards*, 529 U.S. at 452.  In his second PCR Petition, Fellows asserted appellate counsel was ineffective for, among other things, failing to obtain necessary transcripts, assert prosecutorial misconduct claims, raise issues concerning his interrogation, or raise errors and conflict of interest by trial counsel.  *Fellows*, 2020 WL 4038994, at *1.  However, the Vermont Supreme Court held that the claims against appellate counsel were procedurally barred because Fellows was unable to show cause as to why he did not assert the claims in his first PCR Petition.  *Id.* at *3.

The U.S. Supreme Court has held that a procedurally defaulted ineffective-assistance-of-appellate-counsel claim cannot be used to show cause for the procedural default of another claim unless the petitioner can also show cause for the default of his ineffective-assistance-of-appellate-counsel claim.  *See Edwards*, 529 U.S. at 453.  Here, Fellows argues that his ineffective-appellate-counsel claims were, in turn, defaulted due to the ineffectiveness of his first PCR counsel.  (Doc. 11 at 25, 29.)  *See also Fellows*, 2020 WL 4038994, at *3.  The Supreme Court has explicitly rejected the notion that ineffective PCR counsel can constitute cause to excuse the default of an ineffective-appellate-counsel claim, explaining:

> [Such a holding] would . . . produce a domino effect: Prisoners could assert their postconviction counsel's inadequacy as cause to excuse the default of their appellate ineffectiveness claims, and use those newly reviewable appellate ineffectiveness claims as cause to excuse the default of their underlying claims of trial error.  [Such a] rule thus could ultimately knock down the procedural barriers to federal habeas review of nearly any defaulted claim of trial error.

*Davila*, 137 S. Ct. at 2069; *id.* at 2070 (noting that this proposed rule "would also undermine the doctrine of procedural default and the values it serves"). Accordingly, because the alleged ineffectiveness of Fellows's PCR counsel cannot excuse the default of his ineffective-appellate-counsel claims, those claims cannot serve as cause to overcome the default of Fellows's underlying claims.

Alternatively, Fellows argues that the ineffectiveness of his PCR attorney provides cause for this court to review his underlying claims. In that vein, Fellows asserts a number of ways in which his PCR counsel was allegedly ineffective. (Doc. 11 at 9, 10–11, 23, 25, 31–34, 42, 50.) As a general rule, because petitioners do not have a constitutional right to counsel in state postconviction proceedings, "attorney error committed in the course of [those] proceedings . . . cannot supply cause to excuse a procedural default that occurs in those proceedings." *Davila*, 137 S. Ct. at 2065 (internal citation omitted) (citing *Coleman*, 501 U.S. at 755). The Supreme Court has recognized a narrow exception to that rule, holding that, where state law requires ineffective-assistance-of-trial-counsel claims to be brought in initial-review collateral proceedings (rather than on direct appeal) or channels such claims into collateral proceedings, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if . . . counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17; *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). The Court has made clear that this exception applies only to claims of ineffective assistance of trial counsel. *Davila*, 137 S. Ct. at 2069 ("*Martinez* covers only one trial error (ineffective assistance of trial counsel).").

The alleged ineffectiveness of Fellows's PCR attorney therefore cannot establish cause to excuse the default of any of his claims except those relating to the alleged ineffectiveness of his trial counsel. To satisfy his burden to show cause for those claims, Fellows must show: (1) that his PCR counsel was constitutionally ineffective under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); and (2) that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. Fellows asserts that PCR counsel was ineffective for failing to raise a claim that trial counsel had a conflict of interest (Doc. 11 at 11), failing to fully present expert opinions regarding ineffective-trial-counsel claims or notify hired experts to appear at the PCR proceeding (*id.* at 33–34, 50), and failing to argue that trial counsel was ineffective for failing to hire an expert (*id.* at 42).

Most of these vague claims are belied by the record. Fellows's PCR counsel did, in fact, obtain and present expert testimony in support of his ineffective-assistance-of-trial-counsel claims. *Fellows*, 2018 WL 4835000, at *1. Furthermore, the record shows that PCR counsel did raise a claim that trial counsel was ineffective for not hiring a forensic medical expert to rebut the testimony of the nurse practitioner. *Id.* at *2. The Vermont Supreme Court denied the claim, however, concluding that it was reasonable for trial counsel to refrain from hiring an expert given the defense's strategy to contest Fellows's criminal intent rather than whether the charged act actually occurred. *Id.*

Fellows's claim that PCR counsel should have raised a claim that trial counsel had a conflict of interest is vague and conclusory, but reading his submissions

35

liberally, he is presumably referring to his claim that trial counsel supported the reelection campaign of the prosecutor on Fellows's case, Vince Illuzzi. (Doc. 4 at 11–12.) He attaches a letter signed by his trial counsel encouraging voters to support Illuzzi, who "[f]or 20 years . . . has been state's attorney," at the polls on Tuesday, August 14. (Doc. 11-5.) Although the letter is not dated, the court takes judicial notice[6] of the fact that, of recent years, August 14 fell on a Tuesday in 2007, 2012, and 2018. In addition, though the court does not take judicial notice of this fact or accept it as true, newspaper articles report that Illuzzi has been a state's attorney since 1998,[7] such that 2018 would mark 20 years of service. Notably, 2018 was indeed an election year for Vermont state's attorneys[8] with an August 14 primary. Thus, the letter allegedly evidencing trial counsel's conflict of interest appears likely to be from 2018.

To demonstrate a violation of the Sixth Amendment right to conflict-free counsel, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

---

[6] The court may take judicial notice of facts that are "not subject to reasonable dispute" if such facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Therefore, the court may take judicial notice of facts established by a calendar, as the accuracy of a calendar cannot be reasonably questioned. *See, e.g.*, *Edwards v. Berryhill*, 17-CV-1247F, 2019 WL 2340953, at *4 n.10 (W.D.N.Y. June 3, 2019) (taking judicial notice of fact established by calendar); *Nassry v. St. Luke's Roosevelt Hosp.*, 1:13-cv-4719-GHW , 2016 WL 1274576, at *13 n.8 (S.D.N.Y. Mar. 31, 2016) (same).

[7] *See, e.g.*, Alicia Freese, *Three State's Attorneys Face Scrutiny Ahead of Tough Primaries*, SEVEN DAYS (Aug. 1, 2018), *available at* https://www.sevendaysvt.com/vermont/three-states-attorneys-face-scrutiny-ahead-of-tough-primaries/Content?oid=18653655. The Second Circuit has held that "it is proper to take judicial notice of the *fact* that press coverage . . . contained certain information, without regard to the truth of [its] contents." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

[8] *See* https://electionarchive.vermont.gov/candidates/view/Vincent-Illuzzi. *See also Piccolo v. N.Y.C. Campaign Fin. Bd.*, No. 05–CV–7040, 2007 WL 2844939, at *2 n.2 (S.D.N.Y. Sept. 28, 2007) (courts may take judicial notice of "matters in the public record . . . such as election dates and results").

Here, trial counsel's support for Illuzzi's reelection seems to have occurred nearly eight years after trial counsel represented Fellows throughout 2009 and 2010. There is therefore no basis to conclude that trial counsel's interests diverged from Fellows's during the course of the representation.

Moreover, although the § 2254 Petition asserts that trial counsel's performance was deficient in numerous ways (Doc. 4 at 5–7), Fellows "has not shown that [trial counsel's] purported lapses were related in any way to his alleged conflict of interest." *Burchard v. Schneiderman*, 445 F. App'x 415, 418 (2d Cir. 2011). Accordingly, even if the conflict arose around the time of his trial, "there is nothing in the record that suggests any aspect of [trial] counsel's performance was linked or compromised because of his association with the [d]istrict [a]ttorney's re-election campaign." *Id.* at 417 (internal quotation marks omitted) (rejecting conflict-of-interest claim where, nearly four years before the defendant's trial, counsel was campaign manager for reelection of the district attorney who personally tried defendant's case). Because Fellows has not shown that the underlying ineffective-trial-counsel claim based on an alleged conflict of interest "has some merit," *Martinez*, 566 U.S. at 14, he has not met his burden to establish cause to excuse the default of that claim.

Finally, Fellows asserts, without further explanation, that there would be a "[f]urther miscarriage of [j]ustice . . . if this court refuses to hear the matters at hand." (Doc. 11 at 62.) Use of the fundamental miscarriage of justice exception to procedural default "is 'extremely rare' and should be applied only in 'the extraordinary cases.'" *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (quoting *Schlup*, 513 U.S. at

321–22).  A fundamental miscarriage of justice arises when a petitioner "is actually innocent of the crime for which he has been convicted."  *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2003) (internal quotation marks omitted).  To establish actual innocence, the petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Bousley*, 523 U.S. at 623 (internal quotation marks omitted).  As explained above, Fellows has not met that burden.  Consequently, all claims not raised in his first PCR Petition are procedurally defaulted.

## III.    Merits of Fellows's Claims

Although this Report and Recommendation concludes that all of Fellows's claims are untimely or procedurally defaulted, a few of his claims merit further discussion.

### A.    Claims Raised in First PCR Petition

Of the claims presented in the instant 2254 Petition, five were arguably raised in Fellows's first PCR petition: (1) trial counsel's failure to challenge the admission of Fellows's police interview; (2) trial counsel's decision not to hire a forensic medical expert to counter the nurse practitioner's testimony; (3) trial counsel's acknowledgment in his opening statement of Fellows's sexual relationship with the victim's mother when the mother was 14 years old; (4) trial counsel's failure to call additional character witnesses; and (5) the trial court's failure to provide a full read-back of certain items of evidence during jury deliberations.  *Fellows*, 2018 WL 4835000, at *2–3.  (Doc. 4 at 5 (claimed experts were a waste of time and money), 6 (did not present witnesses in defense's favor; failed to suppress incriminating

interrogation; told the jury of unsubstantiated prior bad act), 14 (judge gave jury only partial read-back of evidence they requested).)  By decision dated September 18, 2018, the Vermont Supreme Court rejected each of these claims, which are part of the grounds for relief numbered (1) and (4) in the instant Petition, concerning the ineffective assistance of trial counsel and judicial misconduct.  *Id.*

Fellows argues that the state court's decision in his first PCR proceeding was based on an "unreasonable determination of the facts." (Doc. 11 at 49.)  He baldly asserts that the court made up its own facts, instead of recounting "what actual[l]y happened." (*Id.*)  He also contends that the Court unreasonably applied federal law governing the right to effective counsel because, in his view, "[a]ny reasonable court" would have "easily" found his attorneys to be incompetent and ineffective.  (*Id.* at 50.)

### 1.    Legal Standards Governing § 2254 Petitions

Under 28 U.S.C. § 2254(a), a state prisoner may challenge "the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Under this standard, "[e]rrors of state law are not subject to federal habeas review, for 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"  *Bell v. Ercole*, 631 F. Supp. 2d 406, 414 (S.D.N.Y. 2009) (quoting *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004)).  In short, a petitioner must establish that his state conviction violated federal law.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

"Not every alleged violation of federal law, however, will warrant the issuance of a writ of habeas corpus."  *Bell*, 631 F. Supp. 2d at 414.  Instead, a reviewing court may grant relief only if the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). This deferential standard of review is triggered when the petitioner's claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *see Bell v. Miller*, 500 F.3d 149, 154–55 (2d Cir. 2007).

A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08 (omission in original) (internal quotation marks omitted). In other words, "the state court decision [must] be more than incorrect or erroneous"; it "must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[I]t is well-established in [this] [C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Cotto*, 331 F.3d at 248 (internal quotation marks omitted); *see also Silva v. Keyser*, 271 F. Supp. 3d 527, 538 (S.D.N.Y. 2017). This standard "is difficult to meet," and it was intended to be. *Metrish v.*

*Lancaster*, 569 U.S. 351, 357–58 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

Under § 2254(d)(2), a state court has not made an "unreasonable determination of the facts" "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, the federal court is required to "accord the state trial court substantial deference," and "[i]f '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (second alteration and omission in original) (quoting *Wood*, 558 U.S. at 301). Moreover, a state court's factual findings are presumed to be correct unless the petitioner can rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[9]

To prevail on a claim of ineffective assistance of counsel under federal law, as determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. at 687–88, a petitioner must show both (1) that his counsel's performance was objectively unreasonable under professional standards prevailing at the time, and (2) that counsel's deficient performance prejudiced the petitioner's case. When analyzing the performance prong, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Counsel is "strongly presumed to have rendered adequate assistance and made all

---

[9]  Neither the Supreme Court nor the Second Circuit has determined how § 2254(d)(2) and § 2254(e)(1) "interact, specifically whether § 2254(e)(1) applies in every case in which a petitioner brings a challenge under § 2254(d)(2)." *Cardoza v. Rock*, 731 F.3d 169, 177 n.5 (2d Cir. 2013); *see also Brumfield*, 576 U.S. at 322. But the court need not address this issue here because Fellows cannot satisfy the standards set by either provision.

significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To satisfy the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and it "requires a substantial, not just conceivable, likelihood of a different result," *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks omitted).

Moreover, in the context of a review under § 2254(d), "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 699 (2002). Rather, the petitioner must show "that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* Since "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and internal quotation marks omitted); *see also Cullen*, 563 U.S. at 190 ("[R]eview of [a state court's] decision is . . . doubly deferential . . . [because] [w]e take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)" (internal citations and quotation marks omitted)); *Acevedo v. Capra*, No. 13 Civ. 5579(BMC), 2014 WL 1236763, at *13 (E.D.N.Y. Mar. 25, 2014) ("To prevail, petitioner must show not only that counsel's performance fell below the *Strickland* standard of reasonableness, but also that the state court's application of the *Strickland* standard was itself unreasonable and not merely incorrect."). Accordingly, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### 2.    Application to Fellows's Claims

Applying this framework, the state court's decision regarding Fellows's claims was not based on an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  First, with respect to Fellows's claim that his trial counsel was ineffective for failing to challenge the admission of Fellows's police interview, the Vermont Supreme Court determined the claim was "unavailing" because Fellows did not raise it on direct appeal or in the lower PCR court proceedings, and had presented no expert testimony in support of the claim.  *See Fellows*, 2018 WL 4835000, at *2.  More importantly, any assertion that the interview violated his Fifth Amendment right against self-incrimination, and therefore should not have been admitted into evidence, was undermined by the Vermont Supreme Court's factual findings that Fellows "drove himself to the police station and acknowledged that he was there willingly to talk to police about the incident in question." *Id.*  Aside from his bare-bones assertion that "[p]olice initiated questioning" (Doc. 11 at 12), Fellows has presented no evidence—let alone "clear and convincing evidence"—in this § 2254 proceeding to rebut the accuracy of those factual findings. 28 U.S.C. § 2254(e)(1).

Because any challenge to the admission of the interview would have been undermined by these facts and thus unsuccessful, trial counsel's failure to make the challenge does not fall outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  An attorney is not ineffective for failing to advance weak

or meritless arguments. *See Mayo*, 13 F.3d at 533; *Aparicio*, 269 F.3d at 99. The Vermont Supreme Court's conclusion regarding this claim was therefore not contrary to or an unreasonable application of federal law under *Strickland*.

Second, the Vermont Supreme Court found that it was reasonable for trial counsel to forego hiring a forensic medical expert to counter the nurse practitioner's testimony concerning a vaginal abrasion she observed on the victim shortly after the incident. *Fellows*, 2018 WL 4835000, at *2. Specifically, the Court found that Fellows "directed a defense strategy that combined presenting evidence of his good character along with the contention that any improper conduct on his part during the night in question occurred while he was sleeping and thus lacked the requisite intent." *Id.* In addition, because he had voluntarily "affirmed the complainant's credibility and equivocated as to whether the charged acts occurred" in his police interview, trial counsel had "limited options for a defense strategy." *Id.*; *see also Fellows*, 2013 VT 45, ¶ 8.

In light of these limited options and the chosen defense strategy, it was reasonable for trial counsel not to hire a forensic medical expert to counter the nurse practitioner's testimony. The failure to seek an expert is not "objectively unreasonable" under *Strickland* where counsel chooses a strategy that does not require an expert. "*Strickland* . . . permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'" *Harrington*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 691). In such circumstances, even if it is apparent that expert testimony could be relevant to a certain defense, "it would be reasonable to conclude that a competent attorney might elect not to use it." *Id.* at 108; *see also id.* at 111

44

("*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense."). And certainly "[a]n attorney need not pursue an investigation that . . . might be harmful to the [chosen] defense." *Id.* at 108.

Here, the defense's strategy was to contest that Fellows had the requisite criminal intent, rather than to challenge whether the charged acts actually occurred. To that end, defense counsel argued that Fellows was asleep at the time of the offense. Although Fellows now asserts that he denied the charged acts happened (Doc. 11 at 15), and that trial counsel did not adequately prepare the sleeping defense (*id.* at 5–6), he does not dispute that the lack-of-intent/sleeping defense was the defense's trial strategy. Indeed, Fellows appears to embrace that defense now. (*See id.* at 64.) Given that defense, presenting an expert witness to counter the nurse's testimony about the existence of a vaginal abrasion on the victim could have undercut the defense strategy by undermining Fellows's consistency, credibility, and character, in the eyes of the jury. *See Swaby v. New York*, 613 F. App'x 48, 51 (2d Cir. 2015) ("In our view, fairminded jurists could conclude that a competent attorney could reasonably decline to seek expert testimony, anticipating that an expert's view would more likely undercut than aid the planned . . . defense.").

Giving proper deference to the state court's decision pursuant to § 2254(d), there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Consequently, this court cannot conclude that the state court's decision was contrary to or an unreasonable application of federal law.

Third, the Vermont Supreme Court held that trial counsel's acknowledgment in his opening statement of Fellows's sexual relationship with the victim's mother when the mother was 14 years old was reasonable, in order "to blunt the State's anticipated use of the relationship" to rebut testimony about Fellows's good character. *Fellows*, 2018 WL 4835000, at *3. Part of the defense strategy was to present evidence of Fellows's good character. *Id.* at *2. To accomplish that objective, the defense called Fellows's two sisters as witnesses to testify about his good character and lack of reputation interest in underage girls. *Id.* at *3; *Fellows*, 2013 VT 45, ¶¶ 13, 17. Trial counsel anticipated that the prosecutor, in response, would confront the character witnesses with the fact that Fellows had a sexual relationship with the victim's mother when she was 14 years old, as permitted under V.R.E. 405(a), to undercut the reliability of the good-character testimony. Given the potential harmful impact of this evidence against Fellows, trial counsel attempted to blunt its force by mentioning it first in his opening statement. This was a strategic decision, "one that does not support finding that trial counsel provided ineffective assistance." *Garner v. Lee*, 2:11-CV-00007 (PKC), 2019 WL 4575377, at *8 (E.D.N.Y. Sept. 20, 2019); *United States v. Vegas*, 27 F.3d 773, 779 (2d Cir. 1994) (holding trial counsel's decision to disclose damaging evidence first "was not an act of incompetence on counsel's part[,] but a strategic taking of the initiative"). As such, the state court's conclusion on this ineffective-assistance claim was not "objectively unreasonable." *Bell*, 535 U.S. at 699.

Fourth, the Vermont Supreme Court rejected Fellows's claim that trial counsel was ineffective for failing to call additional character witnesses because he failed to present evidence as to any further relevant testimony that could have been presented.

*Fellows*, 2018 WL 4835000, at *3. In the corollary claim contained in the instant § 2254 Petition, Fellows merely states that his trial counsel was ineffective because "he did not present witnesses in [his] favor." (Doc. 4 at 6.) But he does not indicate that there were any such additional witnesses or what they would have contributed to his sisters' character testimony. Fellows's Petition is completely devoid of factual support for this claim. *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. June 11, 2013) ("It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief.").

Fellows thus cannot show that his trial counsel's conduct in this regard was deficient. "'The decision not to call . . . particular witness[es] is typically a question of trial strategy that reviewing courts are ill-suited to second-guess,' even with respect to those witnesses who 'might offer exculpatory evidence.'" *Lopez v. Graham*, No. 10-CV-0468 (NGG), 2012 WL 1865502, at *16 (E.D.N.Y. May 22, 2012) (quoting *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005)). In particular, an attorney is not ineffective when he fails to call additional witnesses whose testimony would likely be cumulative of testimony already presented. *See Vinson v. Brown*, No. 07 Civ. 2972(VB)(PED), 2011 WL 7640001, at *12 (S.D.N.Y. July 11, 2011) (collecting cases). Here, because Fellows's two sisters were already testifying as to his good character, it was not unreasonable—let alone ineffective—for trial counsel to conclude that introducing additional character witnesses would likely be duplicative and unnecessary. Accordingly, the state court did not unreasonably apply *Strickland* in dismissing this claim against trial counsel.

47

Finally, the Vermont Supreme Court held that the trial court did not err in its response to the jurors' request, after they retired to deliberate, to review certain items of evidence. *Fellows*, 2018 WL 4835000, at *3. Specifically, the jury requested a review of the victim's statement, part of the police interview transcript, and a list of the elements of the charged offense. The Court noted that the jurors indicated their questions were satisfied after the trial court provided the evidence requested. *Id.* Moreover, there was no objection at trial to the trial court's response. *Id.* Fellows now contends that the trial judge erred by providing only a partial read-back of testimony requested by the jury. (Doc. 4 at 14.) Trial judges have "considerable discretion," however, "in determining how to respond to jury requests for the rereading of trial testimony." *Santiago v. Artuz*, No. 99Civ.4477(KMW)(FM), 2003 WL 470569, at *11 (S.D.N.Y. Jan. 23, 2003) (citing *United States v. Escotto*, 121 F.3d 81, 84 (2d Cir. 1997)). In order to demonstrate an error of federal law, Fellows "must show that the trial court acted outside the bounds of its discretion." *Brazeau v. Zon*, No. 04-CV-031, 2007 WL 2903617, at *27 (W.D.N.Y. Oct. 1, 2007). Providing a partial read-back of testimony does not amount to an abuse of discretion where, as here, it adequately responded to the request of jurors. *Id.*; *see United States v. Saavedra*, 661 F. App'x 37, 44 (2d Cir. 2016) (no abuse of discretion based on trial court's refusal to read back to the jury a witness's entire testimony); *Brazeau*, 2007 WL 2903617, at *26–27 (no abuse of discretion in providing partial read-back where jury only requested a read-back of particular testimony).

In this case, the jury requested a review of only certain items of testimony and specifically only a part of the police interview transcript. Fellows does not assert that

the jury requested any further read-back.  Furthermore, the jurors indicated that their

questions had been satisfied by the court's response to their request.  *Fellows*, 2018

WL 4835000, at *3; *see Brazeau*, 2007 WL 2903617, at *27 ("Nothing in the record

indicates that the jurors were not satisfied with the trial court's . . . response to

them.").  Accordingly, the trial court's partial read-back of testimony was not "outside

the range of permissible decisions," *Saavedra*, 661 F. App'x at 44, and the Vermont

Supreme Court's finding to that effect was not unreasonable.

In sum, Fellows has failed to show that the state court reached a decision that

was contrary to, or involved an unreasonable application of, clearly established federal

law with respect to those portions of claims (1) and (4) presented in his first PCR

Petition.  He has also failed to show that the state court came to an unreasonable

determination of the facts in light of the evidence presented during the PCR

proceeding.  Therefore, pursuant to § 2254(d), Fellows's Petition should be denied with

respect to those claims.

### B.   Violations of Fifth and Sixth Amendment Rights to Counsel

Most of Fellows's claims regarding violations of his right to counsel are

ineffective-assistance-of-counsel claims, which are untimely, procedurally defaulted, or

without merit, as explained above.  (*See* Doc. 4 at 18.)  His remaining claims in this

section of the Complaint are that he was denied counsel for his police interview, his

motion for sentence reconsideration, and his state habeas corpus case.  (*Id.*)

With respect to his claim that he was denied counsel during his police interview,

the Vermont Supreme Court has observed that Fellows did not challenge the

admission of the interview on direct appeal or in his first PCR proceeding.  *Fellows*,

49

2018 WL 4835000, at *2.  That claim is therefore procedurally defaulted as well as untimely.  Moreover, the Fifth Amendment right to counsel applies only when a defendant is subject to "custodial interrogation."  *Miranda v. Arizona*, 384 U.S. 436, 469–70 (1966).  Fellows has not shown that he was "in custody" when he made his statements to the police.  The Vermont Supreme Court found that Fellows "drove himself to the police station and acknowledged that he was there willingly to talk to police about the incident in question."  *Fellows*, 2018 WL 4835000, at *2.  His self-serving, unsupported statements that police initiated questioning and refused to let him leave when he tried (Doc. 11 at 12) do not constitute "clear and convincing evidence" to contravene that factual finding.  28 U.S.C. § 2254(e)(1).  Nor does Fellows assert that he affirmatively requested counsel at any point during the interview.  *See Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *Davis v. United States*, 512 U.S. 452, 458 (1994).  Consequently, Fellows has not demonstrated that he is entitled to federal habeas relief on this claim.

Likewise, Fellows is not entitled to habeas relief on his claim that he was denied counsel on his motion to reduce his sentence, because there is no Sixth Amendment right to counsel on such post-appeal motions.  *See United States v. Reddick*, 53 F.3d 462, 464 (2d Cir. 1995) ("[T]he constitutional right to counsel extends only through the defendant's first appeal." (citing *Coleman*, 501 U.S. at 755–57)); *United States v. Pressley*, 03-CR-297-2 (NGG), 2017 WL 3701854, at *4 n.7 (E.D.N.Y. Aug. 25, 2017) (noting federal defendant had no constitutional right to counsel for motion for sentencing reduction); *Keeton v. Clarke*, Civil Action No. 3:19CV841, 2020 WL 4577700, at *7 (E.D. Va. July 22, 2020) (state defendant had no right to counsel on

motion to reconsider sentence); *Wesley v. Hershberger*, Civil Action No. JKB–13–2037, 2015 WL 1919579, at *8 (D. Md. Apr. 27, 2015) (same); *Broderick v. Clarke*, Civil Action No. 7:12–cv–00064, 2012 WL 6019112, at *4 (W.D. Va. Dec. 3, 2012) (same); *cf. Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (declining to decide whether right to counsel applies to post-trial pre-appeal motions). Here, Fellows's direct appeal concluded when the Vermont Supreme Court issued its decision on June 28, 2013, but Fellows did not move for a sentence reduction until September 13, 2013. (*See* Doc. 5-1 at 16.) He was therefore not constitutionally entitled to counsel on this post-appeal motion.

Similarly, there is no constitutional right to counsel for his state habeas corpus proceeding. *See Davila*, 137 S. Ct. at 2062 ("[A] prisoner does not have a constitutional right to counsel in state postconviction proceedings."); *Coleman*, 501 U.S. at 756 ("[A] criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review . . . ."); *Pennsylvania v. Finley*, 481 U.S. 551, 558 (1987) ("[A] constitutional right to appointed counsel . . . does not exist in state habeas proceedings."); *id.* at 555 ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals." (internal citation omitted)). Accordingly, this claim does not state a federal constitutional violation meriting habeas relief.

C.     **Violation of Fifth Amendment Self-Incrimination Clause**

Lastly, Fellows asserts that the DOC is violating his Fifth Amendment right

against self-incrimination by refusing to allow him to participate in certain

programming required to make him eligible for parole because he will not admit to the

crime of which he was convicted.  (Doc. 4 at 19–20.)  He contends that he cannot admit

to the crime because he "was asleep during the time in question" and thus "can[not]

tell anyone what really happened."  (Doc. 11 at 76.)  He therefore claims that the DOC

is effectively increasing his sentence by "compel[ing] [him] to self-incriminate or spend

the rest of [his] life in prison."  (*Id.*)

The Fifth Amendment provides, in relevant part, that no person "shall be

compelled in any criminal case to be a witness against himself."  U.S. Const. Amend.

V.  However, "[i]t is by now fairly well settled that risking the loss of good time credits

or jeopardizing the chance for parole," as a consequence for failing to participate in a

prison program, "does not qualify as sufficiently compulsive to meet th[at] test."

*McChesney v. Hogan*, Civil Action Nos. 9:08–CV–1186 (NAM/DEP), 6:08–CV–1290

(NAM/DEP), 2010 WL 1027443, at *7 (N.D.N.Y. Feb. 26, 2010); *Sayles v. Fischer*,

No. 08–CV–0747, 2011 WL 1199834, at *5 (W.D.N.Y. Mar. 29, 2011).

Here, Fellows had a choice to either admit responsibility for his crime of

conviction or refuse to admit responsibility, refuse to participate in the DOC program,

and forgo the potential for an earlier release date by becoming eligible for parole—

something to which he is not constitutionally entitled.  *See Greenholtz v. Inmates of*

*Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (no constitutional right to parole).

He chose the latter.  *See McKune v. Lile*, 536 U.S. 24, 53 (2002) (O'Connor, J.,

concurring) ("Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose."). Fellows was not made "to be a witness against himself" because his statements were never admitted as testimony against him in a criminal case. Nor was he asked to admit responsibility for uncharged crimes; he was only asked to admit to the crime for which he was already actually convicted. *See Adams v. Annucci*, No. 17-CV-3794 (KMK), 2018 WL 4608216, at *8–9 (S.D.N.Y. Sept. 25, 2018). Accordingly, Fellows's Fifth Amendment rights have not been violated by the DOC's program, and he is not entitled to habeas relief on this claim.

## Conclusion

For these reasons, I recommend that Respondent's Motion to Dismiss (Doc. 5) be GRANTED, and Fellows's § 2254 Petition (Doc. 4) be DISMISSED, as follows:

a.   Claims (2) and (8) regarding ineffectiveness of PCR counsel and misconduct by the State during the PCR proceedings should be DISMISSED with prejudice;

b.   Claims (1) and (3)–(7) should be DISMISSED as time-barred;

c.   Claims (3), (5)–(7), and the portions of claims (1) and (4) not raised in Fellows's first PCR Petition should further be DISMISSED as procedurally defaulted; and

d.   The subset of claims (1) and (4) that were raised in the first PCR proceeding, as well as claims (6) and (7) regarding violations of his right

to counsel and right not to self-incriminate, should also be DISMISSED

as being without merit.

In light of the foregoing recommendations, I further recommend that Fellows's

Motion to Reconsider this Court's denial of his request for appointed counsel (Doc. 10)

be DENIED as moot.

Dated at Burlington, in the District of Vermont, this 10th day of March 2021.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision*." Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).